**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| **EQUAL EMPLOYMENT OPPORTUNITY COMMISSION,** | ) ) ) | |
| Applicant, | ) ) | **CIVIL ACTION NO.:** |
| v. | ) ) ) | **Judge** |
| **AEROTEK, INC.,** | ) ) | **Magistrate Judge** |
| Respondent. | ) ) ) | |

**MEMORANDUM IN SUPPORT OF EEOC'S APPLICATION FOR
<u>PRELIMINARY INJUNCTION</u>**

**I. INTRODUCTION**

Pursuant to § 706(f)(2) of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e-5(f)(2) ("Title VII"), and Rule 65 of the Federal Rules of Civil Procedure, the United States Equal Employment Opportunity Commission ("EEOC" or "Commission") submits this Memorandum in support of its Application for Preliminary Injunction ("Memorandum").[1] EEOC seeks a preliminary injunction to enjoin Aerotek, Inc. ("Aerotek" or "Respondent") from interfering in any way with EEOC's investigation of charges filed against Respondent, including but not limited to prohibiting its employees from communicating with EEOC without Respondent's counsel present.

**II. STATEMENT OF FACTS**

Marco A. Rivera ("Rivera") and Oscar A. Gutierrez ("Gutierrez") (collectively "Charging Parties") filed charges of discrimination ("Charges") against Aerotek on March 20, 2008

---

[1] EEOC's Application for Preliminary Injunction, filed simultaneously with this Memorandum, will be referred to herein as the "Application." References to exhibits attached to the Declaration of the District Director in Support of EEOC's Application for Preliminary Injunction will be referred to as "Rowe Decl. Ex. ___." Reference to exhibits attached to the Declaration of Investigator Eric Lamb will be referred to as "Lamb Decl. Ex. ___."

(amended August 7, 2009) and May 20, 2008 (amended August 17, 2009), respectively, EEOC Charge Nos. 440-2008-05698 and 440-2008-05713. (Rowe Decl. Ex. 1A). Aerotek is a national staffing agency with approximately 6,500 internal and 77,000 contract employees. *See* http://aerotek.com/About-Us. Charging Parties worked as Recruiter I's for three of Aerotek's Illinois offices. Charging Parties allege that Aerotek discriminated against them by segregating them, denying them training, and denying them promotions because of their national origin, Mexican. They also allege that Aerotek constructively discharged them because of their national origin and retaliated against them for engaging in protected activities. (Rowe Decl. Ex. 1A).

As part of EEOC's investigation into Gutierrez's and Rivera's Charges, Investigator Eric Lamb ("Lamb") mailed letters to sixty current and former Aerotek Recruiters requesting that they contact EEOC to provide relevant information. (Lamb Decl. Ex. 2A). Specifically, Lamb endeavored to determine whether other Recruiters had information relevant to the Charges, and whether other Recruiters had also allegedly suffered illegal discrimination.

On November 13, 2009, Aerotek's counsel, Robert J. Smith, left Lamb a voice mail message reporting that he was "very disappointed" in Lamb's efforts to speak with Aerotek Recruiters. In the message, Aerotek's counsel also reported that Aerotek management told current Recruiters not to call Lamb, but instead to direct Lamb to call Aerotek's counsel. (Lamb Decl. ¶ 13). That same day, Lamb received a voice mail message from an Aerotek employee stating that she was willing to speak with EEOC. Forty minutes later, the same Aerotek employee informed Lamb that she was prohibited by Aerotek from speaking with him alone, and directed Lamb to contact Aerotek's counsel. (Lamb Decl. ¶ 12).

Upon receiving Aerotek's message asserting that EEOC was not entitled to interview Recruiters, Lamb arranged a conference call with Aerotek's counsel, EEOC investigative staff,

and EEOC attorneys independently. (Lamb Decl. ¶ 14). During the telephone conference, Aerotek asserted that Recruiters are not permitted to speak independently with an EEOC investigator because they are supervisors. (Lamb Decl. ¶ 15). The next day, Respondent provided EEOC with a memorandum explaining Aerotek's position that "Recruiters and Recruiter II's are considered supervisors." (Lamb Decl. Ex. 2B). To support its position, Respondent suggested that "[a]t bottom . . . Recruiter I's are responsible for negotiating wage rates, selecting and placing contract employees, evaluating their performance, disciplining or terminating them." Id. Aerotek cited no authority in the Seventh Circuit, and no authority analyzing Title VII, the local rules, or the ethical rules of professional conduct, to support its assertion that Recruiters are supervisors who are represented by Aerotek's counsel. Id.

To better understand Aerotek's claim that Recruiters are "supervisors and members of management,"[2] id., EEOC contacted former Aerotek Recruiter I's, Recruiter II's, and Account Managers to inquire about Aerotek Recruiters' duties. Johanna Flores stated in a sworn declaration that as an Aerotek Recruiter, she "never hired, fired, promoted, demoted, disciplined, or evaluated any temporary employees." (Lamb Decl. Ex. 2C, Flores Decl. ¶ 14). Additional former Aerotek Recruiters declared that they also never hired, fired, promoted, demoted, disciplined, or evaluated any temporary employees. (Lamb Decl. Ex. 2C, Rivera Decl. ¶ 14, Haag Decl. ¶ 24). Instead, only "Aerotek Account Managers and/or temporary employers have the authority to determine if and when temporary employees should be hired, fired, promoted, demoted, or disciplined." (Flores Decl. ¶ 14). A former Account Manager reported that while he had authority to hire or fire temporary employees and set their pay rates, Recruiters did not. (Lamb Decl. Ex. 2C, Peters Decl., ¶¶ 3(a)-(e), 7(a)-(d)). He also reported that as an Account

---

[2] In this Memorandum, EEOC uses the terms "supervisor" and "manager" interchangeably, since Respondent appears to use these terms interchangeably in its written statement to EEOC.

3

Manager, he was part of Aerotek's management, but Recruiters were not. (Id. at ¶¶ 8, 9).

Nevertheless, EEOC has since refrained from independently contacting any Recruiters, due to Aerotek's admitted prohibition of such communications. EEOC's ability to obtain witness cooperation and to complete the investigation into the Charges has been severely impaired - if not completely halted - by Aerotek's refusal to permit Recruiters to speak independently and freely with EEOC. (Rowe Decl. ¶¶ 13, 16-18). Upon conducting a preliminary investigation into the Charges, and upon determining that Aerotek has unlawfully impeded EEOC's investigation, EEOC has concluded, pursuant to § 706(f)(2) of Title VII, that "prompt judicial action is necessary to carry out the purposes of Title VII." (Rowe Decl. ¶ 16).

## III.  ARGUMENT

**EEOC Has Met the Criteria for Obtaining a Preliminary Injunction that Would Allow it to Proceed with Its Statutory Enforcement Duties.**

The Commission easily satisfies the statutory conditions for injunctive relief under § 706(f)(2) of Title VII. By enacting § 706(f)(2), Congress specifically authorized EEOC to seek injunctive relief in the public interest:

> Whenever a charge is filed with the [EEOC] and the Commission concludes on the basis of a preliminary investigation that prompt judicial action is necessary to carry out the purposes of this Act, the [EEOC] ... may bring an action for appropriate temporary or preliminary relief pending final disposition of such charge. Any temporary restraining order or other order granting preliminary or temporary relief shall be issued in accordance with Fed R. Civ. P. 65.

§ 706(f)(2) of Title VII.

EEOC can also meet the requirements for a preliminary injunction as set forth by the Seventh Circuit in Abbott Lab. v. Mead Johnson & Co., 971 F.2d 6, 11-12 (7th Cir. 1992) (citations omitted). To obtain a preliminary injunction, a plaintiff must first demonstrate: "(1) some likelihood of succeeding on the merits; and (2) that it has 'no adequate remedy at law' and

4

will suffer 'irreparable harm' if preliminary relief is denied." Abbott Lab, 971 F.2d at 11. If the plaintiff satisfies these thresholds, a court then considers: "(3) the irreparable harm the non-moving party will suffer if preliminary relief is granted, balancing that harm against the irreparable harm to the moving party if relief is denied; and (4) the public interest, meaning the consequences of granting or denying the injunction to non-parties." Id at 11-12. Then, the court weighs the factors using a "sliding scale" approach:

> The more likely it is the plaintiff will succeed on the merits, the less the balance of irreparable harms need weigh towards its side; the less likely it is the plaintiff will succeed, the more the balance need weigh towards its side.

Id at 12. (citations omitted). As explained *infra*, the Commission can meet all of the requirements for a preliminary injunction to bar Aerotek from preventing Recruiters from independently communicating with and aiding EEOC in its investigation. See id.[3]

### A. EEOC can Prove Likelihood of Success on the Merits.

EEOC will likely prevail on the merits of its claim that Aerotek's actions constitute prohibited interference with EEOC's congressionally-mandated obligation to receive and investigate charges, as well as with individuals' rights to file charges and participate in administrative investigations. To demonstrate a likelihood of success on the merits, plaintiffs must only proffer a "better than negligible chance of succeeding." Meridian Mut. Ins. Co. v. Meridian Ins. Group, 128 F.3d 1111, 1114 (7th Cir. 1997) (citations omitted). While Aerotek suggests that its Recruiters are supervisors who cannot speak to EEOC without its employer's

---

[3] Some courts have found that the equitable standards required for preliminary relief do not apply when a government agency seeks a preliminary injunction to aid in the enforcement of an act of Congress. Courts analyzing EEOC's basis for injunctive relief under § 706(f)(2) have determined that the public interest prong of the equitable test is assumed, since the EEOC acts in the public interest, and the requisite burden of showing irreparable harm is reduced. See EEOC v. Cosmair, Inc., 821 F.2d 1085, 1090 (5th Cir. 1987); EEOC v. Pacific Press Pub. Ass'n, 535 F.2d 1182, 1187 (9th Cir. 1976). Although not all courts have adopted this interpretation of § 706(f)(2), even those that have declined to follow it nevertheless concluded that, under the traditional equitable analysis, EEOC is entitled to relief when the traditional public interest prong is satisfied. See EEOC v. Astra, 94 F.3d 738, 743 (2d Cir. 1996); EEOC v. Anchor Hocking Corp., 666 F.2d 1037, 1040-41 (6th Cir. 1981). Here, EEOC can show that it meets the test under § 706(f)(2) as well as the more rigorous traditional test.

counsel present, EEOC's evidence proves these assertions to be false.

Congress granted EEOC the authority and obligation to investigate charges of discrimination.  See 42 U.S.C. § 2000e-5(a).  To ensure that the Commission can fulfill its duties, Congress granted EEOC the power to access evidence relevant to its investigations.  See 42 U.S.C. § 2000e-8(a).  "Congress entrusted the Commission with significant enforcement responsibilities in respect to Title VII."  Astra, 94 F.3d at 744.  The Supreme Court recognized that "it is crucial that the Commission's ability to investigate charges of systemic discrimination not be impaired."  EEOC v. Shell Oil Co., 466 U.S. 54, 69 (1984).  Moreover, "EEOC's primary role is that of a law enforcement agency . . . ."  In re Bemis Co., 279 F.3d 419, 421 (7th Cir. 2002).  Here, Aerotek is hindering EEOC's ability to investigate the Charges, and consequently EEOC's ability to enforce Title VII, by falsely asserting that its Recruiters are supervisors who must have counsel present in interviews with EEOC.

The presence of Aerotek's counsel at EEOC interviews, however, will have a chilling effect on Recruiters' testimony regarding unlawful employment practices, thus impeding EEOC's investigatory efforts.  This concern is especially weighty for Recruiters who have suffered discrimination or harassment.  "Requiring the approval and presence of corporate counsel would have the inevitable effect of chilling the exchange of information."  United States v. Beiersdorf-Jobst, 980 F. Supp. 257, 262 (N.D. Ohio 1997) (refusing counsel's request to be present at government's interviews of former employees because "former employees would most likely be hesitant about speaking freely in the presence of their former employer's attorney") (citations omitted).  Based upon EEOC's experience interviewing witnesses, EEOC is unlikely to obtain additional complaints of discrimination - especially from current employees, where the chilling effect is even greater - in the presence of corporate counsel.  (Lamb Decl. ¶ 19).  Further,

if Aerotek's counsel were to represent Recruiters, counsel would risk a conflict of interest because their interest is in representing the corporation and management.

Moreover, Aerotek is further violating public policy by interfering with individuals' well-established rights to file and participate in investigations of charges filed with EEOC. Courts consistently find that agreements with employers that hinder employees' cooperation with EEOC investigations violate public policy. See, e.g., Astra, 94 F.3d at 744 (finding it "overwhelmingly clear that the provisions prohibiting settlors from assisting in EEOC investigations offend public policy"); Cosmair, 921 F.2d at 1090 ("an employer and an employee cannot agree to deny the EEOC the information it needs to advance the public interest.") Aerotek's efforts to stalemate EEOC's investigation of the Charges by inflating and mischaracterizing Recruiters' duties interfere not only with EEOC's investigation, but with similar public policy considerations as those examined in Astra and Cosmair. Accordingly, EEOC can prevail on the merits that Aerotek is hindering EEOC's investigatory duties as well as violating public policy.

### i. Recruiters Are Neither Management nor Supervisors.

While Respondent does not identify under what legal authority it believes its Recruiters are supervisors, an analysis *infra* of Title VII, Local Rule 83.54.2, and the Fair Labor Standards Act suggests that under all potentially relevant authority, Aerotek Recruiters are *not* supervisors.

### 1. Title VII Analysis of Supervisors

Title VII precedent renders Aerotek Recruiters non-supervisors. See Hall v. Bodine Elec. Co., 276 F.3d 345, 355 (7th Cir. 2002) (only employees vested with the authority to "*directly* affect the terms and conditions of a victim's employment" are supervisors for Title VII purposes) (citing Parkins v. Civil Constrs. of Ill., 163 F.3d 1027, 1034 (7th Cir. 1998)) (further citation omitted). One with authority to "hire, fire, demote, promote, transfer or discipline an employee"

has the authority to affect the terms and conditions of an employee's employment. Id. Consequently, employees who lack "final authority to hire, fire, demote, transfer, or discipline" an employee are *not* supervisors under Title VII. Velez v. City of Chicago, 442 F.3d 1043, 1047 (7th Cir. 2006). Here, testimony from former Aerotek Recruiters makes clear that, like the employeee in Hall, Aerotek Recruiters do not have authority to hire, fire, promote, demote, discipline, or transfer employees. See 276 F.3d at 355-56.

Even if Aerotek's assertion that Recruiters oversee aspects of temporary employees' work were true, which EEOC disputes,[4] this assertion nevertheless would not render Aerotek Recruiters supervisors under Title VII. In fact, the Hall court found that employees with greater responsibilities than those allegedly held by Aerotek Recruiters – including directing plaintiff's work operations, providing input for performance evaluations, and training plaintiff, were not "enough" to bring them within Title VII's definition of a supervisor. Id. ("[T]he fact that an employer authorizes one employee to oversee aspects of another employee's job performance does not establish a Title VII supervisory relationship"). Employees who can merely oversee aspects of another employee's job are not supervisors. Velez, 442 F.3d at 1045, 1047 (finding that employee whom the court conceded had "some supervisory control over Plaintiffs," including the ability to assign work, was not a supervisor). Based upon the former Aerotek employees' testimony, Aerotek Recruiters do not affect the terms and conditions of Aerotek's temporary employees, and therefore are not supervisors under Title VII.

---

[4] Former Aerotek employees also dispute this assertion. As shown from the testimony of former Recruiters and Account Managers, Aerotek Recruiters do not have final authority to hire and can only make recommendations that will either be accepted or vetoed by the contract employer and/or an Aerotek Account Manager. (Lamb Decl. Ex. 2C, Gutierrez Decl. ¶¶ 3-4). Moreover, Aerotek Recruiters can only negotiate wage rates within a limited pay range determined by Aerotek Account Managers. (Peters Decl. ¶ 7(a)). Finally, none of the former Aerotek employees reported that Recruiters ever evaluated, disciplined, or terminated temporary employees.

8

## 2. Local Rule 83.54.2 Analysis of Managerial Employees

Local Rule 83.54.2 of the Northern District of Illinois (1999) does not help Respondent's position any more than Title VII does.

Local Rule 83.54.2 governs communications with persons represented by counsel:

> During the course of representing a client a <u>lawyer</u> shall not communicate or cause another to communicate on the subject of the representation with a party the lawyer knows to be represented by another lawyer in that matter . . .

(emphasis added).[5] However, Local Rule 83.54.2 does not apply to communications between EEOC *investigators* and Aerotek Recruiters and only applies to adversarial matters. Given that an EEOC investigator – not a lawyer – contacted Aerotek employees, Local Rule 83.54.2's provisions should not apply. See EEOC v. Midwest Emergency Assoc., No. 04 C 4353, 2006 WL 495971, at *9 (N.D. Ill. Feb. 27, 2006) ("This rule would not appear to apply to the instant matter because the EEOC investigator who conducted the allegedly-improper interview was not an attorney . . . and Respondents do not argue or set forth evidence that an EEOC attorney 'caused' the investigator to conduct the interview"). Similarly here, EEOC's Legal Unit did not direct Lamb to contact Recruiters and only became involved in this matter once Aerotek demanded that counsel arrange and be present for EEOC's interviews. (Lamb. Decl. ¶¶ 10, 14-15).

Further, during the course of an investigation of a charge of discrimination, EEOC is a neutral government entity, not an adversary. There is therefore no pending "matter," as that term is used in Local Rule 83.54.2, since the Charges are still in investigation. See United States v. Balter, 91 F.3d 427, 436 (3d Cir. 1996) (before a criminal's

---

[5] District courts in the Seventh Circuit often examine ABA Model Rule of Professional Conduct 4.2 (1990) when analyzing local rules, since the local rules in the Southern and Northern Districts of Illinois were modeled after Model Rule 4.2. See Weibrecht v. Southern Illinois Transfer, Inc., 241 F.3d 875, 878 (7th Cir. 2001). Model Rule 4.2 is worded identically to Local Rule 83.54.2.

9

indictment, there was no matter). Finally, the purpose behind Local Rule 83.54.2 and Model Rule of Professional Conduct 4.2 is to prevent lawyers from "circumventing opposing counsel to get careless statements from adverse parties," to protect "the integrity of the attorney-client relationship," to prevent the "inadvertent disclosure of privileged information," and to facilitate "settlement by channeling disputes through lawyers familiar with the negotiation process." Guillen v. City of Chicago, 956 F. Supp. 1416, 1427 (N.D. Ill. 1997) (citations omitted). The EEOC investigation, conducted by non-lawyers, does not risk impacting the integrity of any of the issues the Local Rule seeks to protect. Based upon the foregoing, Local Rule 83.54.2 should not apply to the instant matter.

Moreover, even if EEOC were to concede that Local Rule 83.54.2 regulates an investigator's contact with Respondent's employees, which EEOC does not, Recruiters are not "represented parties" under Local Rule 83.54.2. Local Rule 83.54.2's comment explains that, for corporate entities, represented parties include "persons having a managerial responsibility on behalf of the organization . . . ." Comment ¶ 2 (emphasis added). "[N]ot all employees with supervisory or manager-type positions, or titles, fall into the category of 'managerial' employees, or are encompassed in the Comment to Rule 4.2." Orlowski v. Dominick's Finer Foods, 937 F. Supp. 723, 729 (N.D. Ill. 1996) (concluding that "lower-level managers" such as grocery store assistant managers and department managers are not covered by Model Rule 4.2); see also Weibrecht, 241 F.3d at 882 (finding pilot whose management authority did not include hiring or firing employees, was akin to a more experienced employee who had discretion over a less skilled employee, and was not a manager, so he was not covered under Local Rule

83.54.2).  Aerotek Recruiters, like Dominick's assistant managers, have to seek approval from higher-level management before they can make employment decisions affecting other employees.  Aerotek Recruiters therefore lack the managerial authority contemplated by Local Rule 83.54.2.  Consequently, Aerotek cannot rely upon Local Rule 83.54.2 as a means for impeding EEOC's investigation.

### 3.  Fair Labor Standards Act Analysis of Management Employees

Although the Fair Labor Standards Act of 1938, 29 U.S.C. § 201, ("FLSA") should not be utilized by the Court to determine whether Aerotek Recruiters are supervisors and members of management, Respondent's written statement to EEOC only referenced cases analyzing whether employees of various recruiting agencies, including Aerotek, should be certified for collective actions under the FLSA and/or whether employees fall under exemptions to the FLSA such that employers are not obligated to pay them overtime.

Many of the cases are particularly unhelpful because they analyze whether recruiters fall under the *administrative* - not the managerial - exemption to the FLSA.  The administrative exemption requires an analysis of the employee's salary, as well as whether the employee's (i) "primary duty is the performance of office or non-manual work directly related to the management or general business operations of the employer or the employer's customers; and (ii) primary duties include the exercise of discretion and independent judgment with respect to matters of significance."  29 C.F.R. § 541.200(a).  These factors have no bearing on the necessary analysis here: whether Aerotek Recruiters have sufficient authority to be deemed managers for purposes of being interviewed by EEOC with Aerotek's counsel present.

Further, the case law Respondent cites is not relevant to the issue of whether Aerotek's Recruiters in Illinois have managerial authority, because none of the case law is in the Seventh

Circuit. Also, the only case analyzing Aerotek employees (for the sole purpose of determining whether to certify a FLSA collective action) reviews the responsibilities of Recruiters in California and North Carolina, not Illinois, where the Charges were filed. Andrade v. Aerotek, No. CCB-08-2668, 2009 WL 2757099 at *2 (D. Md. Aug. 26, 2009). In that case, the court found that Recruiters' responsibilities vary greatly from one state to another, id. at *3, which even Aerotek concedes, but did not address the issue of whether Recruiters are managers.

Even if an analysis under the FLSA were relevant, the employees in the case law Respondent cites are distinguishable because they have far more responsibilities than those of Aerotek Recruiters. See Department of Labor, DOL Op. Letter, 2005 DOL WH LEXIS 59, at *3 (Oct. 25, 2005) (the Staffing Managers (who are comparable to Aerotek Account Managers, not Recruiters) have authority to negotiate wages, supervise the temporary employee's work, evaluate the employees, and determine whether to discipline or transfer the employees); Goff v. Bayada Nurses, 424 F. Supp. 2d 816, 819 (E.D. Pa. 2006) (employee has authority to hire, supervise, evaluate, terminate, and set salaries for other employees); Hudkins v. Maxim Healthcare Services, 39 F. Supp. 2d 1349, 1350 (M.D. Fla. 1998) (recruiter's duties include selecting employees, approving higher rates, disciplining, and terminating employees); Gonzalez v. Barrett Bus. Services, No. CV-05-0104-EFS, 2006 U.S. Dist. LEXIS 36661, at *61 (E.D. Wa. June 6, 2006) (plaintiff's duties included performing evaluations, hiring, disciplining and terminating employees, providing instructions to temporary workers, and reassigning workers). Unlike the aforementioned cases, both former Aerotek Recruiters and an Account Manager declared that Recruiters have *no* supervisory responsibilities with respect to temporary employees. Instead, only Aerotek Account Managers hold those responsibilities. (Peters Decl. ¶¶ 3, 5, 7). Accordingly, even under Respondent's own cited cases, its analysis fails.

Based upon the foregoing, EEOC has demonstrated its likelihood of success on the merits in proving that Aerotek violated public policy by prohibiting its Recruiters from communicating freely with EEOC. Under any legal analysis, Aerotek Recruiters are neither managers nor supervisors. Therefore, EEOC bears a lesser burden for demonstrating irreparable harm. "A lesser showing that those provisions are causing irreparable harm will suffice to support a preliminary injunction barring their enforcement" when it is clear that the likelihood of success on the merits is great. Astra, 94 F.3d at 744 (citations omitted).

### B. EEOC and the General Public Will Suffer Irreparable Harm If the Court Does Not Grant the Preliminary Injunction and there is No Adequate Remedy at Law.

If the Court does not grant the preliminary injunction, EEOC will suffer irreparable harm because it will be unable to carry out its Congressional mandate to enforce Title VII, and the general public is, consequently, denied the benefits of such laws. EEOC cannot enforce Title VII if it is prevented from investigating freely charges of discrimination. EEOC is further harmed by not speaking independently with Aerotek Recruiters, because it is unlikely that Recruiters will complain of discrimination in the presence of Respondent's counsel. Therefore, not only is the Commission's investigation into the underlying Charges hindered, EEOC also will be unable to determine whether additional Aerotek employees suffered discrimination. (Lamb Decl. ¶ 19; Rowe Decl. ¶ 18). See Astra. ("[c]learly, if victims of or witnesses to sexual harassment are unable to approach the EEOC or even to answer its questions the investigatory powers that Congress conferred would be sharply curtailed and the efficacy of investigations would be severely hampered").

Aerotek employees will also suffer irreparable harm. The Court should presume that Aerotek's instruction to all Recruiters not to speak independently with EEOC has already had a chilling effect on their freedom to exercise their rights to report discrimination to EEOC. See

EEOC v. Ralphs Grocery, 300 F. Supp. 2d 637, 640 (N.D. Ill. 2004) (finding that an arbitration agreement prohibiting employees from filing a charge would "have a serious chilling effect" and that employees have a "statutory right" to file charges with EEOC). Also, employees who would benefit from remedial action will also be harmed if EEOC cannot continue its investigation.

Moreover, there is no adequate remedy at law. The only other means for EEOC to communicate with current Recruiters is to subpoena them, a burdensome and time-consuming process. Respondent should not be allowed to obstruct unilaterally its employees' rights to access freely the Commission by requiring EEOC to use its subpoena power to force employees to speak. Requiring EEOC to subpoena individuals "boils down to a contention that employees . . . should speak only when spoken to." Astra, 94 F.3d at 745. The Astra court explained, "It would be most peculiar to insist that the EEOC resort to its subpoena power when public policy so clearly favors the free flow of information between victims of harassment and the agency entrusted with righting the wrongs inflicted upon them. Such a policy would not only stultify investigations but also significantly increase the time and expense of a probe." Id. Given the considerable harm that EEOC and Aerotek employees will suffer, EEOC's obligation to protect the public interest, and the lack of other available remedies, the Court should find that EEOC will suffer irreparable harm and grant the preliminary injunction.

### C. The Balancing of Interests Weighs in Favor of Granting the Injunction.

Finally, public interest weighs in favor of granting this injunction. The Supreme Court has explained that "the function of the charge . . . is to place the EEOC on notice that someone . . . believes that an employee has violated [the anti-discrimination laws]." Shell, 466 U.S. at 68. "When the EEOC acts on the information 'albeit at the behest of and for the benefit of specific individuals, it acts also to vindicate the public interest in preventing employment

14

discrimination.'" Cosmair, 821 F.2d at 1090 (quoting General Tel. Co. v. EEOC, 446 U.S. 318, 326 (1980)).  EEOC can anticipate no harm to Respondent that would justify denying EEOC's Application.  The preliminary injunction would merely prevent Respondent from interfering with an EEOC investigation, something the law already prohibits.  EEOC cannot serve the public interest if it cannot freely investigate charges of discrimination.

## IV.    CONCLUSION

All of the factors weigh in favor of granting a preliminary injunction.  For the foregoing reasons, EEOC respectfully requests that the Court grant EEOC's Application and issue the Proposed Order.

Dated: December 14, 2009				Respectfully submitted,


/s/ John C. Hendrickson
John C. Hendrickson
Regional Attorney


/s/ Diane I. Smason
Diane I. Smason
Supervisory Trial Attorney


/s/ Laura R. Feldman
Laura R. Feldman
Trial Attorney
IL. Bar No. 6296356
EQUAL EMPLOYMENT OPPORTUNITY
COMMISSION
500 West Madison Street, Suite 2000
Chicago, Illinois  60661
Laura.Feldman@EEOC.gov
(312) 353-6204

**CERTIFICATE OF SERVICE**

The undersigned, an attorney, hereby certifies that, having received consent in writing from Nina G. Stillman, Aerotek's counsel for the Gutierrez and Rivera EEOC Charges, pursuant to Federal Rule of Civil Procedure 5(b)(2)(e), she caused a copy of the foregoing to be sent by electronic mail to the following individual:

To:  Nina G. Stillman
     Morgan, Lewis & Bockius LLP
     77 West Wacker Dr.
     Chicago, IL 60601-5094
     nstillman@morganlewis.com


Date: December 14, 2009              /s/ Laura R. Feldman
                                     Laura R. Feldman